IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ELENA HUNTER, individually and on behalf of all others similarly situated; BLIND AMBITIONS GROUPS; and, BLIND AMBITIONS GROUPS, on behalf of its members and all others similarly situated, <br><br> Plaintiffs, <br><br> VS. <br><br> BRANCH BANKING AND TRUST COMPANY d/b/a BB&T, <br><br> Defendant. | § § § § § § § § § § § § § § § § § | Civil Action No. 3:12-CV-2437-D |

MEMORANDUM OPINION
AND ORDER

Defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(1) presents the question whether plaintiffs have standing to litigate a federal-law claim complaining of the inaccessibility of one of defendant's automated teller machines ("ATMs") to blind persons. Concluding that plaintiffs have not established their standing, the court grants the motion to dismiss but also grants plaintiffs leave to replead.

I

Plaintiff Elena Hunter ("Hunter"), who is blind, resides in Dallas. According to plaintiffs' amended complaint, when Hunter attempted to use an ATM located at 2724 Greenville Avenue in Dallas that is owned and operated by defendant Branch Banking and Trust Company ("BB&T"), she found that it was not accessible to blind persons, as required

by federal and state law. Soon afterward, she filed this lawsuit against BB&T on behalf of herself and all others similarly situated.

After Hunter filed suit, an amended complaint was filed that added a second plaintiff, Blind Ambitions Group ("Blind Ambitions"). Hunter is an active member of Blind Ambitions, an organization that provides support to the blind. In the amended complaint, plaintiffs allege several claims on behalf of Hunter and all others similarly situated, and on behalf of Blind Ambitions, its members, and all others similarly situated. The amended complaint alleges that a significant portion of BB&T's ATMs—including the one located at 2724 Greenville Avenue that Hunter attempted to use— violate the following laws: Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA") and its implementing regulations; the Texas Human Resource Code, Tex. Hum. Res. Code Ann. § 121.001 *et seq*. (West 2001 & West Supp. 2012-13); and the Texas Architectural Barrier Act, Tex. Gov't Code Ann. Ch. 469 (West 2012). Plaintiffs seek a permanent injunction directing BB&T to take all steps necessary to bring all of its ATMs into full compliance with the law, as well as declaratory judgment and statutory damages.

BB&T moves to dismiss under Rule 12(b)(1), contending that Hunter and Blind Ambitions lack standing.[1]

---

[1] BB&T filed its motion to dismiss before plaintiffs filed the amended complaint that added Blind Ambitions as a plaintiff. The parties have adequately briefed, however, whether Blind Ambitions has standing, and that question is before the court for resolution.

II

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). "It is incumbent on all federal courts to dismiss an action whenever it appears that subject matter jurisdiction is lacking." *Id*.

It is well settled that "the issue of standing is one of subject matter jurisdiction." *Cobb v. Cent. States*, 461 F.3d 632, 635 (5th Cir. 2006). The doctrine of standing addresses the question of who may properly bring suit in federal court, and "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). It "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). To establish standing, a plaintiff must meet both constitutional and prudential requirements. *See, e.g., Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 560 (5th Cir. 2001). The only issue in this case is constitutional standing, which requires that a litigant establish three elements: (1) injury-in-fact that is concrete and actual or imminent, not hypothetical; (2) a fairly traceable causal link between the injury and the defendant's actions; and (3) that the injury will likely be redressed by a favorable decision. *E.g., Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009). To obtain injunctive relief, plaintiffs must be "likely to suffer future injury." *City of L.A. v. Lyons*, 461 U.S. 95, 105 (1983). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief[.]" *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974). The threat of future

injury to the plaintiff "must be both real and immediate, not conjectural or hypothetical." *Lyons*, 461 U.S. at 102 (quotation marks omitted).

When challenging subject matter jurisdiction under Rule 12(b)(1), a party can make a facial attack or a factual attack. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981). If the party merely files its Rule 12(b)(1) motion, it is considered a facial attack, and the court looks only at the sufficiency of the allegations in the pleading and assumes them to be true. *Id.* If the allegations are sufficient to allege jurisdiction, the court must deny the motion. *Id.* This is akin to a Rule 12(b)(6) motion in that the "pleading's allegations are presumed to be true, and '[i]f those allegations sufficiently allege a claim for recovery the complaint stands and the federal court must entertain the suit.'" *Vinmar Overseas, Ltd. v. OceanConnect, LLC*, 2012 WL 3599486, at *4 (S.D. Tex. Aug. 20, 2012) (quoting *Jones v. SuperMedia Inc.*, 281 F.R.D. 282, 286 (N.D. Tex. 2012) (Boyle, J.)).

A party can also make a factual attack on subject matter jurisdiction by submitting evidence, such as affidavits or testimony. *See id.*; *IBEW-NECA Sw. Health & Benefit Fund v. Winstel*, 2006 WL 954010, at *1 (N.D. Tex. Apr. 12, 2006) (Fitzwater, J.) (citing *Paterson*, 644 F.2d at 523). "A factual attack on the subject matter jurisdiction of the court, however, challenges the facts on which jurisdiction depends and matters outside of the pleadings, such as affidavits and testimony, are considered." *Vinmar Overseas*, 2012 WL 3599486, at *4 (quoting *Oaxaca v. Roscoe*, 641 F.2d 386, 391 (5th Cir. Unit A 1981)). The "court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. May 1981). "No presumptive truthfulness

attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* The plaintiff in a factual challenge, as the party seeking to invoke jurisdiction, must "submit facts through some evidentiary method and . . . prov[e] by a preponderance of the evidence that the trial court does have subject matter jurisdiction." *Paterson*, 644 F.2d at 523.

III

Hunter has not established standing to sue for injunctive relief under the ADA. BB&T requests that the court take judicial notice of Hunter's numerous other lawsuits against banks that she alleges operate ATMs that are not accessible to the blind. It argues that her litigation history is relevant because it casts significant doubt on whether she is likely to return to the ATM located at 2724 Greenville Avenue and thereby suffer an injury-in-fact. *See, e.g., Molski v. Kahn Winery*, 405 F.Supp.2d 1160, 1165 (C.D. Cal. 2005) (finding that plaintiff's litigation history undermined credibility of promise to return). The court grants BB&T's request to take judicial notice of Hunter's litigation history. *See* Fed. R. Evid. 201(b); *Washington v. Andrews*, 2011 WL 2117548, at *1 (E.D. Cal. May 27, 2011) (taking judicial notice of plaintiff's litigation history). Because the court has taken such judicial notice, BB&T's Rule 12(b)(1) motion to dismiss presents a factual challenge to subject matter jurisdiction.[2] Accordingly, Hunter was required to "submit facts through some

---

[2]In denying BB&T's motion for jurisdictional discovery, the court referred to the motion to dismiss for lack of subject matter jurisdiction as a *facial* challenge. *See Hunter v. Branch Banking & Trust Co.*, 2012 WL 5845426, at *2 (N.D. Tex. Nov. 19, 2012) (Fitzwater, C.J.). At the time of that decision, the challenge appeared in all respects to be

- 5 -

evidentiary method" and to prove jurisdiction by a preponderance of that evidence. *See Paterson*, 644 F.2d at 523. Because Hunter has not adduced sufficient evidence to establish jurisdiction and has instead relied primarily on her pleadings,³ she has failed to meet her burden of establishing standing by a preponderance of that evidence.

IV

The court next considers whether Blind Ambitions has established its standing.

A

There are two ways for an organization to demonstrate standing. First, the organization can assert representational standing on behalf of its members.

> An association has standing to bring a suit on behalf of its members when: (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members.

*Texans United for a Safe Econ. Educ. Fund v. Crown Cent. Petroleum Corp.*, 207 F.3d 789, 792 (5th Cir. 2000) (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977); *Friends of the Earth, Inc. v. Chevron Chem. Co.*, 129 F.3d 826, 827-28 (5th Cir.

---

*facial*. The court now concludes after further review, after taking judicial notice of extrinsic evidence, and for the reasons stated in this decision, that the challenge to Hunter's individual standing and Blind Ambitions' representational standing predicated on Hunter's individual standing are both *factual*, although the challenge to Blind Ambitions' standing as an organization is *facial*.

³In response to BB&T's motion, plaintiffs have introduced the declaration of Mark Marvel, President and CEO of Blind Ambitions.

1997)). When a defendant contests an organization's standing based on a factual challenge to the standing of a member whose standing to sue in her own right controls the organization's standing, the Rule 12(b)(1) motion is also a factual attack.

Second, an organization may have standing on its own behalf. To establish standing on its own, the organization must show that it has constitutional standing in the same manner as any individual. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1992). Because this method of establishing standing does not rely on the independent standing of any of the organization's members or any other plaintiff, a challenge to this form of standing is facial unless the defendant adduces evidence attacking a jurisdictional fact on which standing relies. BB&T has not produced any evidence challenging Blind Ambitions' standing on its own behalf, and therefore the court treats this challenge as facial. *See Jones*, 281 F.R.D. 282, 286.[4]

B

Blind Ambitions has failed to show representational standing because the only member it identifies is Hunter, who does not have standing to bring this suit. Blind Ambitions has therefore failed to show that one of its members has standing in her own right.

C

Blind Ambitions has not adequately alleged organizational standing. In the context

---

[4]Blind Ambitions has attached to its response a declaration supporting organizational standing. Even if the court treated the facts in the declaration as allegations of the amended complaint, this would not change the court's decision.

of this case, an organization can show that it has suffered injury-in-fact when it has diverted resources to counteract the defendant's conduct and this diversion has concretely and "perceptibly impaired" its ability to carry out its purpose. *Havens Realty*, 455 U.S. at 379; *see also AHF Cmty. Dev., L.L.C. v. City of Dall.*, 633 F.Supp.2d 287, 294 (N.D. Tex. 2009) (Fitzwater, C.J.) (stating that "a nonprofit fair housing organization can establish standing under the [Fair Housing Act] on the ground that the defendant's challenged unlawful conduct had frustrated its mission and required it to devote significant resources to counteracting the putatively discriminatory effects of that conduct." (citing, *inter alia*, *Havens Realty*, 455 U.S. at 379)). It is insufficient to allege "simply a setback to the organization's abstract social interests." *Havens Realty*, 455 U.S. at 379.

Blind Ambitions alleges that it had to redirect resources from educational and advocacy activities to support its efforts related to enforcing state and federal disability laws. The President and CEO of Blind Ambitions avers that the organization has a "keen interest in locating and identifying [compliant] ATMs," and that "[b]ecause of its efforts related to ATM accessibility, including specifically its investigation of Defendant's discriminatory conduct, [the organization] has diverted resources from its education, counseling, and networking services." Marvel Decl. ¶¶ 7, 9. Accepting these assertions as true, Blind Ambitions has not adequately pleaded standing. "[T]he mere fact that an organization redirects some of its resources to litigation and legal counseling in response to actions or inactions of another party is insufficient to impart standing upon the organization." *La. ACORN Fair Hous. v. LeBlanc*, 211 F.3d 298, 305 (5th Cir. 2000) (internal quotation marks

omitted) (holding that organization failed to establish standing where there was no evidence at trial that it was required to put any "specific projects" on hold or "re-double efforts" in response to the defendant's conduct). This is because conferring standing whenever a plaintiff expends resources on litigation expenses would create a situation where "any sincere plaintiff could bootstrap standing by expending its resources in response to actions of another." *Ass'n for Retarded Citizens of Dall. v. Dall. Cnty. Mental Health & Mental Retardation Ctr. Bd. of Trustees*, 19 F.3d 241, 244 (5th Cir. 1994). And although Blind Ambitions maintains that the resources spent on efforts related to ATM accessibility are non-litigation expenses, these expenses appear to be pre-litigation expenses that cannot support standing. In *NAACP v. City of Kyle, Texas*, 626 F.3d 233 (5th Cir. 2010), which involved an ordinance that the plaintiffs alleged violated the Fair Housing Act, the court held that prelitigation expenses, including time spent considering the ordinance and $15,000 spent on a study of the ordinance's impact and associated lobbying, did not establish injury-in-fact because the plaintiffs did not explain how the activities differed from routine lobbying activities. *Id.* at 238-39. The amended complaint alleges that Blind Ambitions has an interest in locating and identifying non-complaint ATMs, and it appears that through this course of private enforcement action discovered that BB&T's ATMs may not be compliant. As in *City of Kyle*, there is no way to determine how Blind Ambitions' investigation into BB&T's conduct differs from its ordinary private enforcement activities. And to the extent that diverting funds to Blind Ambitions' efforts to locate and identify non-compliant ATMs constitutes an injury, causation is lacking because there is no allegation that Blind Ambitions

"would not have undertaken the same efforts in the absence of the alleged illegal act by the defendant[]." *ACORN v. Fowler*, 178 F.3d 350, 358 (5th Cir. 1999). Therefore, without more specific allegations regarding how BB&T caused Blind Ambitions to divert funds and thereby suffer a concrete and perceptible injury, it has failed to adequately plead that it has standing on its own behalf.

V

Because plaintiffs lack standing, the court dismisses their ADA claims for lack of subject matter jurisdiction. This leaves only their state-law claims. The court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c), and therefore dismisses them without prejudice. *See Brookshire Bros. Holdings, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009) ("The general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial[.]").[5]

VI

Although the court is dismissing plaintiffs' ADA claims, it will permit them to replead. *See In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.") (internal quotation marks and citation omitted). Because plaintiffs

---

[5]This decision is subject to reconsideration if either plaintiff is later able to demonstrate standing to pursue a federal-law claim.

have not stated that they cannot, or are unwilling to, cure the defects that the court has identified, the court grants them 30 days from the date this memorandum opinion and order is filed to file a second amended complaint. The court recognizes that Hunter's failure to respond to BB&T's factual attack on her standing—and the corresponding defect in Blind Ambitions' representational standing predicated on Hunter's individual standing—cannot be cured by repleading alone. But because repleading is warranted to address the facial challenge to Blind Ambitions' organizational standing, the court sees no reason to foreclose plaintiffs from amending to address standing more generally. Moreover, plaintiffs will also be on notice to prepare a factual response if BB&T brings another factual challenge to standing.

\* \* \*

For the reasons explained, the court grants BB&T's motion to dismiss and grants plaintiffs leave to amend.

**SO ORDERED.**

February 19, 2013.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE