IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ELENA HUNTER, on behalf of herself and all others similarly situated, et al., | § § § | |
| Plaintiffs, | § § | |
| | § | Civil Action No. 3:12-CV-2437-D |
| VS. | § § | |
| BRANCH BANKING AND TRUST COMPANY d/b/a BB&T, | § § § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

Defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(1), or to compel arbitration, presents questions concerning individual and associational standing arising from litigation complaining of automated teller machines ("ATMs") that plaintiffs allege are not compliant with federal and Texas disability laws. Concluding that plaintiffs have standing, the court denies defendant's motion to dismiss and grants its unopposed motion to compel arbitration.

I

Plaintiff Elena Hunter ("Hunter") lives in Addison, Texas and has been blind since birth. She avers that she attempted to use an ATM located at 2724 Greenville Avenue in Dallas and an ATM located at 409 Coit Road in Plano, both of which are owned and operated by defendant Branch Banking and Trust Company ("BB&T"). According to Hunter, she discovered that neither ATM was accessible to blind persons, as required by federal and state law. Soon thereafter, she filed this lawsuit against BB&T on behalf of herself and all others

similarly situated.  She later amended her complaint to add Blind Ambitions Group ("Blind Ambitions") as a plaintiff.  Hunter is an active member of Blind Ambitions, an organization that provides support to the blind.

BB&T moved to dismiss this action for lack of subject matter jurisdiction.  The court granted the motion but also granted plaintiffs leave to replead to establish jurisdiction.  *See Hunter v. Branch Banking & Trust Co.*, 2013 WL 607151, at *5 (N.D. Tex. Feb. 19, 2013) (Fitzwater, C.J.).  In their second amended complaint, plaintiffs assert several claims on behalf of Hunter and all others similarly situated, and on behalf of Blind Ambitions, its members, and all others similarly situated.  They allege that a significant number of BB&T's ATMs—including the ATMs located at 2724 Greenville Avenue and 409 Coit Road that Hunter attempted to use—violate the following laws: Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), and its implementing regulations; and the Texas Human Resources Code, Tex. Hum. Res. Code Ann. § 121.001 *et seq*. (West 2001 & West Supp. 2012-13).  Plaintiffs seek a permanent injunction directing BB&T to take all steps necessary to bring all of its ATMs into full compliance with the law, as well as a declaratory judgment and statutory damages.

BB&T moves anew to dismiss, challenging plaintiffs' standing.  Alternatively, it moves to compel plaintiffs to arbitrate their claims.  Plaintiffs oppose the motion to dismiss but not the alternative motion to compel arbitration.

II

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998).  It is well settled that "the issue of standing is one of subject matter jurisdiction." *Cobb v. Cent. States*, 461 F.3d 632, 635 (5th Cir. 2006).  And "[i]t is incumbent on all federal courts to dismiss an action whenever it appears that subject matter jurisdiction is lacking." *Stockman*, 138 F.3d at 151.  The doctrine of standing addresses the question of who may properly bring suit in federal court, and is an "essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  It "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

As the parties seeking to invoke federal jurisdiction, plaintiffs bear the burden of proving their standing. *Lujan*, 504 U.S. at 561.  Because BB&T's motion to dismiss asks the court to consider records of Hunter's ADA litigation history, the challenge is factual rather than facial. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981) ("If a defendant makes a 'factual attack' upon the court's subject matter jurisdiction over the lawsuit, the defendant submits affidavits, testimony, or other evidentiary materials.").[1]  In a

---

[1]Contrary to BB&T's assertion, attaching documents to support its motion to compel arbitration does not transform its motion to dismiss into a factual attack; the two motions are separate.

factual challenge, the "court is free to weigh the evidence and satisfy itself as to the existence

of its power to hear the case." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. May 1981).

Further, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of

disputed material facts will not preclude the trial court from evaluating for itself the merits

of jurisdictional claims." *Id.* As the parties seeking to invoke jurisdiction, plaintiffs have the

burden of establishing jurisdiction.  They are "required to submit facts through some

evidentiary method and ha[ve] the burden of proving by a preponderance of the evidence that

the trial court does have subject matter jurisdiction." *Paterson*, 644 F.2d at 523; *see also*

*New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 327 (5th Cir. 2008).

### III

The court first addresses whether Hunter has standing.

### A

To establish standing, a plaintiff must meet both constitutional and prudential

requirements. *See, e.g., Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 560 (5th Cir.

2001).  Constitutional standing requires that a litigant establish three elements: (1) injury in

fact that is concrete and actual or imminent, not hypothetical; (2) a fairly traceable causal link

between the injury and the defendant's actions; and (3) that the injury will likely be redressed

by a favorable decision. *See, e.g., Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009).

To have standing to obtain injunctive relief, the plaintiff must also show that she is likely to

suffer future injury by the defendant and that the sought-after relief will prevent that future

injury. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) ("Past exposure to illegal

conduct does not in itself show a present case or controversy regarding injunctive relief." (internal quotation marks, citations, and alteration omitted)).

There are two ways that are currently recognized for an ADA claimant to establish injury-in-fact when seeking prospective relief. First, she may show that she intends to return to the allegedly noncompliant public accommodation and therefore faces a real and immediate threat that she will again be harmed by ADA non-compliance. Under this "intent to return" approach, courts have examined four non-exclusive factors to determine whether the plaintiff in fact intends to return: (1) the proximity of the defendant's business to the plaintiff's residence, (2) the plaintiff's past patronage of the defendant's business, (3) the definitiveness of the plaintiff's plans to return, and (4) the plaintiff's frequency of travel near the defendant. *See, e.g., Access 4 All, Inc. v. Wintergreen Commercial P'ship, Ltd.*, 2005 WL 2989307, at *3 (N.D. Tex. Nov. 7, 2005) (Fish, C.J.); *Wilson v. Costco WholeSale Corp.*, 426 F.Supp.2d 1115, 1119 (S.D. Cal. 2006). These factors are intended to be aspects for courts to consider when deciding whether the plaintiff has established that she is likely to return to the public accommodation. Accordingly, some courts have examined and considered a plaintiff's litigation history. *See, e.g., Brother v. CPL Inves., Inc.*, 317 F.Supp.2d 1358, 1368-70 (M.D. Fla. 2004); *Nat'l Alliance for Accessibility, Inc. v. Belk, Inc.*, 2013 WL 1614672, at *3 (E.D.N.C. Apr. 15, 2013).[2]

---

[2]Some cases consider litigation history specifically as part of the third factor for determining the plaintiff's intent to return. *See, e.g., Johnson v. Overlook at Blue Ravine, LLC*, 2012 WL 2993890, at *4 (E.D. Cal. July 20, 2012).

The second recognized way to establish injury-in-fact is for the plaintiff to show that she is continually injured by being deterred from making use of the allegedly noncompliant public accommodation.  Under this theory of standing, "[j]ust as a disabled individual who intends to return to a noncompliant facility suffers an imminent injury from the facility's existing or imminently threatened noncompliance with the ADA, a plaintiff who is deterred from patronizing a store suffers the ongoing actual injury of lack of access to the store." *Chapman v. Pier 1 Imports*, 631 F.3d 939, 950 (9th Cir. 2011) (internal quotation marks and citation omitted).  This theory is predicated on the ADA's language stating that a plaintiff need not "engage in a futile gesture if such person has actual notice that a person or organization . . . does not intend to comply" with the ADA.  42 U.S.C. § 12188(a)(1).  The Fifth Circuit arguably endorsed this way of establishing standing in *Frame v. City of Arlington*, when it stated that "a disabled individual need not engage in futile gestures before seeking an injunction; the individual must show only that [the inaccessible object or place] affects his activities in some concrete way."  *Frame v. City of Arlington*, 657 F.3d 215, 236 (5th Cir. 2011) (en banc).  Accordingly, as an alternative to the "intent to return" method, a plaintiff can establish standing by showing that she knows that the public accommodation is noncompliant and that she would visit that accommodation were it compliant.  *See Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1075 (7th Cir. 2013) (quoting *Steger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir. 2000) ("Although plaintiffs need not engage in the 'futile gesture' of visiting a building containing known barriers that the owner has no intention of remedying, they must at least prove knowledge of the barriers and that they would like to

visit the building in the imminent future but for those barriers." (citations omitted))).

Because the plaintiff must still prove under the "deterrent effect" method that she has an

intent to return, the four-factor test applied to "intent to return" cases also pertains to

"deterrent effect" cases to determine whether the plaintiff is in fact suffering an injury

because she is being deterred from using the noncompliant accommodation.

B

Although this is a close case, after weighing the evidence, the court holds that Hunter

has established injury-in-fact by a preponderance of the evidence.

The court's determination that Hunter has proved that she will return to the ATMs at

issue is based primarily on her sworn declaration that she "intend[s] to continue to visit the

specific BB&T ATMs identified . . . because [she is] often in the vicinity of those ATMs and

[she] desire[s] to have access to the banking services that are offered at those ATMs."

Hunter Decl. 2, ¶ 10.[3]  BB&T argues that the court should not credit this assertion because

Hunter has not provided any facts to support the assertion that she is frequently in the vicinity

of these ATMs.  Although the weight to be given Hunter's statement is affected by the

absence of specific supporting facts, her sworn assertion is not contradicted by any other

evidence in the record.  And it is reasonable to infer that Hunter desires to locate accessible

ATMs in areas she frequents.  For example, a person who is not visually impaired can

generally locate an accessible ATM in a metropolitan area rather facilely; a visually impaired

---

[3]The court cites the evidence this way because the declaration is not included in a
properly-paginated appendix.  *See* N.D. Tex. Civ. R. 7.1(i)(1) and (4).

person, however, cannot assume that she will be able to use the closest ATM. And even if an ATM is ADA-accessible, it may present a less desirable option to the visually impaired person because, for example, she will incur a fee for using it that she would not incur if she were an account holder at the sponsoring bank.[4]

The court also considers in Hunter's favor the distances from her residence to the ATMs in question (13.5 miles from one and 11 miles from the other). BB&T argues that these distances make it implausible that she would use these ATMs, especially since there are many others located closer to her residence. Hunter responds that these ATMs are in "close proximity" to her home and that it does not matter whether there are other ATMs closer to her residence because requiring her to offer a reason why she would rather use BB&T's ATM would vitiate the ADA's accessibility requirements and lead to absurd results.

Although the court does not agree that the two ATMs are in "close proximity" to Hunter's residence, a plaintiff's stated intent to return to an ATM 11 miles from her home

---

[4]BB&T argues that the court should not consider that Hunter has an account at BB&T because standing is determined at the time the action is filed, and Hunter did not have an account when she filed suit. BB&T maintains that she created the account purely in an attempt to manufacture standing. But the question whether a plaintiff has standing is evaluated as of the time the *operative* complaint is filed. *See Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 51 (1991) (analyzing standing as of the time the "second amended complaint was filed"); *Mink v. Suthers*, 482 F.3d 1244, 1254 (10th Cir. 2007) (examining standing from time amended complaint was filed because amended complaint supersedes original); *Cleveland Branch, N.A.A.C.P. v. City of Parma, Ohio*, 263 F.3d 513, 521 n.9, 524 (6th Cir. 2001) (stating that standing is determined as of time complaint is filed and reviewing plaintiff's second amended complaint). As of the filing of the second amended complaint, Hunter was a BB&T account holder. Accordingly, the court concludes that she would be able to use a BB&T-sponsored ATM without being charged a fee that she would incur if she were not an account holder.

is more plausible when, for example, there are no closer, accessible, no-fee ATMs.[5]  In the face of Hunter's evidence, BB&T has not introduced any contrary proof.  The court therefore concludes that the fact that Hunter resides 11 or 13.5 miles from an ATM in question weighs slightly in Hunter's favor because she may reasonably intend to return to one of the ATMs.[6]

BB&T also contends that Hunter has no plausible intent to return because she has only visited each ATM once.  But Hunter need not engage in the futile gesture of attempting to use an ATM that she knows is inaccessible.  So under the "deterrent effect" method of proving standing, this factor does not weigh against a finding of injury-in-fact.

BB&T also posits that Hunter merely avers an intent to return "some day," and that it is well established that such general intentions cannot support standing.  *See Lujan*, 504 U.S. at 564.  The court agrees with BB&T that Hunter has not adduced evidence of plans to return to either ATM on a specific date.  But what constitutes a sufficiently concrete plan to return must be evaluated in context.  For example, where the allegedly infringing site is many

---

[5]By "no-fee" ATMs, the court includes ATMs that may charge a fee, but that do not charge fees that a plaintiff would incur when using another bank's ATM.  For example, a plaintiff's account at her own bank might require that she pay an ATM usage fee because she carries a small account balance.  In this sense, she would not be using a "no-fee" ATM.  But she would be avoiding the additional fees assessed when using another bank's ATM.

[6]Although the court need not engage in such analysis here, it bears mentioning that evaluating intent to return only according to distance, ADA-accessibility, and cost of use can understate the importance of other factors of significance to someone who is visually impaired.  For example, what if an ATM were located closer to the plaintiff's residence, was fully ADA-compliant, and did not charge a fee, but was located in a high crime area?  A visually impaired person might reasonably prefer not to use an ATM where her inability to see well (or at all) could pose a safety hazard, even if that ATM were located closer to her residence.

miles away or requires reservations, it is reasonable to require more than a statement that the plaintiff plans to return in the future. *See Davis v. Am. Nat'l Bank of Tex.*, 2012 WL 7801700, at *6 (E.D. Tex. Dec. 11, 2012), *rec. adopted*, 2013 WL 1195695 (E.D. Tex. Mar. 22, 2013). But where the allegedly infringing site is an ATM in an area the plaintiff frequently visits, it is unreasonable to impose similar requirements. Ordinarily, the decision to visit an ATM involves little or no advance planning, and this fact should be considered when evaluating the plaintiff's intention to visit an ATM. *See generally Parr v. L & L Drive-Inn Rest.*, 96 F.Supp.2d 1065, 1079 (D. Haw. 2000) ("Visiting a fast food restaurant, as opposed to a hotel or professional office, is not the sort of event that requires advance planning or the need for a reservation . . . . [S]pecification as to a date and time of returning to this public accommodation is impossible due to the nature of the event."). Accordingly, considering Hunter's evidence that she is often in the vicinity of the ATMs and that she intends to return because she wishes to use BB&T's ATM service in the area, it is not necessary for her to establish a specific time when she will return.

Finally, BB&T attempts to refute Hunter's position through evidence that she has filed multiple, almost identical, lawsuits against other banks throughout the Dallas-Fort Worth area. According to BB&T, this should alter how the court perceives all of the facts alleged. The court agrees with BB&T that a plaintiff's litigation history may undercut her attempt to prove an intent to return. *See, e.g., Norkunas v. Wynn Resorts Holdings, LLC*, 2007 WL 2949569, at *4 (D. Nev. Oct. 10, 2007) (stating that "a plaintiff's litigation history can undercut the sincerity of his or her expressed intent to return"); *Brother v. Tiger Partner,*

*LLC*, 331 F.Supp.2d 1368, 1374-75 (M.D. Fla. 2004) (similar).[7] Litigation history is relevant and undermines credibility if the statements made in other cases undermine the credibility of statements made in the instant case. *See D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1042-43 (9th Cir. 2008) (Rymer, J., dissenting).  Thus if, for example, there were evidence that, despite stating an intention to do so, Hunter had not returned to the ATMs at issue in previous suits, or that it would be infeasible for her to return to every such ATM, her credibility would be called into question. *Id.*  But unlike cases where the intention to return is not credible based in part on litigation history, Hunter's prior expressions of intent to return to other ATMs is consistent with her intention to return to the ATMs in question here. The fact that Hunter has a BB&T account, that she has stated an intent to return to the ATMs in question, the reasonableness of her stated intentions, combined with the absence of contrary evidence support the finding that she intends to return and distinguishes this case from others in which the plaintiffs were prolific litigants.  *See Brother*, 317 F.Supp.2d at 1368-70 (plaintiff was involved in at least 50 other ADA lawsuits in Florida); *Molski v. Mandarin Touch Rest.*, 385 F.Supp.2d 1042, 1046 (C.D. Cal. 2005) (plaintiff expressed intent to return to 400 or more businesses spread across California).[8]

---

[7]Some courts are cautious about using litigation history when making credibility determinations. *See, e.g., D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1039-40 (9th Cir. 2008) (noting that court "must be particularly cautious about affirming credibility determinations that rely on a plaintiff's past ADA litigation," and holding that, on the facts presented, the district court erred in making such a conclusion).

[8]In responding to BB&T's contention that Hunter's stated intention to return is not credible because she has filed multiple lawsuits, plaintiffs suggest that Hunter is acting as a

C

BB&T nevertheless maintains that, even if Hunter has established standing to pursue injunctive relief, she lacks standing to assert claims as to ATMs that she has not personally visited: the many ATMs throughout BB&T's network that are not specifically identified in the pleadings. But Hunter has not asserted any *personal* claims with reference to these ATMs; these claims are instead styled in terms of a putative class action.[9] Whether such

---

tester. In fact, some parts of her declaration support this conclusion. *See* Hunter Decl. 2, ¶ 14 ("I will continue to visit BB&T ATMs both because I desire to use them personally and because I support the goal of enforcing the laws which regulate ATM accessibility for the blind and visually impaired."). Were Hunter intending to act only a tester, it is questionable whether she could demonstrate standing. As a tester, she would be unable to use the "deterrent effect" method of proving standing, which excuses a person from engaging in the futile gesture of attempting to use an accommodation that she knows is noncompliant. This is because a tester is someone whose goal is to *test* the accommodation to determine *if* it is accessible. *See Payne v. Chapel Hill N. Props., LLC*, __ F.Supp.2d ___, 2013 WL 2285248, at *6 n.5 (M.D.N.C. 2013) ("In ADA litigation, a 'tester' is an individual who tests a location's compliance with federal disability statutes." (citation omitted)). Although courts have recognized that a plaintiff can intend to return to an accommodation both to visit it and to test ADA compliance, *see, e.g., Access 4 All, Inc. v. Absecon Hospitality Corp.*, 2006 WL 3109966, at *7 (D.N.J. Oct. 30, 2006) (plaintiff stayed at hotel multiple times, asserted particular reasons for staying at the specific hotel, and claimed he also wished to conduct additional examination for ADA compliance), incompatibility between the two theories of standing can arise when a plaintiff asserts that she is a tester for a specific accommodation but also seeks to use the "deterrent effect" theory as to the same accommodation. In the present case, it appears from Hunter's second amended complaint and the evidence in the record that she is not acting simply as a tester.

[9]It is possible that BB&T is confusing the relief Hunter seeks (including a permanent injunction directing BB&T to make all of its ATMs blind-accessible under the terms of the ADA) with her individual claims. That is, while Hunter's individual claims are limited to the two ATMs specifically identified, she appears to seek relief in the form of an injunction that reaches more broadly. Although Hunter's request may implicate questions about the proper scope of injunctive relief, it does not undermine her showing of standing.

- 12 -

differences with the putative class implicate standing or the class certification requirements of Rule 23(a) is not entirely settled. *See Hunter v. First United Bank & Trust Co.*, 2012 WL 7004154, at *2 (E.D. Tex. Dec. 11, 2012) (noting that there is no "clear consensus"), *rec. adopted*, 2013 WL 419227 (E.D. Tex. Feb. 1, 2013). The court will not, however, treat this as an issue that bears on Hunter's standing.

D

Accordingly, the court finds that Hunter has proved her standing by a preponderance of the evidence, and it denies BB&T's motion to dismiss Hunter's action for lack of standing.

IV

The court next addresses whether Blind Ambitions has associational standing.

A

> An association has standing to bring a suit on behalf of its members when: (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members.

*Texans United for a Safe Econ. Educ. Fund v. Crown Cent. Petroleum Corp.*, 207 F.3d 789, 792 (5th Cir. 2000) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977); *Friends of the Earth, Inc. v. Chevron Chem. Co.*, 129 F.3d 826, 827-28 (5th Cir. 1997)). "The first two components of *Hunt* address constitutional requirements, while the third prong is solely prudential." *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010) (citing *United Food & Commercial Workers Union Local*

- 13 -

*751 v. Brown Grp., Inc.*, 517 U.S. 544, 555 (1996)).   When a defendant contests an organization's standing based on a factual challenge to the standing of a member whose standing to sue in her own right controls the organization's standing, the Rule 12(b)(1) motion is also a factual attack.[10]

B

BB&T contends that Blind Ambitions cannot satisfy the first and third prongs of the *Hunt* test; it does not dispute the second prong, i.e., that the interests that Blind Ambitions seeks to protect are germane to the organization's purpose.

1

As to the first prong, BB&T maintains that Hunter has not established standing, and, because she is the only member who Blind Ambitions argues has standing, Blind Ambitions does not have standing.   This argument fails because the court has concluded above that Hunter has standing, and *Hunt* only requires that "at least one member of the association have standing to sue in his or her own right."   *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 191 (5th Cir. 2012) (citing *Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 587-88 (5th Cir. 2006)).

---

[10]An organization may also have standing on its own.  *See Hunter*, 2013 WL 607151, at *3.   In response to BB&T's previous motion to dismiss, plaintiffs argued that Blind Ambitions had adequately pleaded organizational standing.  The court disagreed.  *See id.* at *3-4.  Plaintiffs do not maintain in response to BB&T's present motion that Blind Ambitions has organizational standing, and the court concludes, after reviewing the second amended complaint, that plaintiffs have not adequately pleaded that Blind Ambitions has organizational standing.

- 14 -

2

As a prudential limit on standing, the third prong of the *Hunt* test is a "judicially self-imposed limi[t] on the exercise of federal jurisdiction[.]" *Brown Grp.*, 517 U.S. at 557 (citations and quotations omitted) (first alteration in original). It "focus[es] on . . . matters of administrative convenience and efficiency, not on elements of a case or controversy." *Id.* A court therefore "assess[es] this prong by examining both the relief requested and the claims asserted" to determine whether either requires individual participation of the organization's members. *Ass'n of Am. Physicians*, 627 F.3d at 551 (citing *Cornerstone Christian Schs. v. Univ. Interscholastic League*, 563 F.3d 127, 134 n.5 (5th Cir. 2009)).[11]

Blind Ambitions' requested relief does not require individual participation of the organization's members. "In general, 'an association's action for damages running solely to its members would be barred for want of the association's standing to sue.'" *Ass'n of Am. Physicians*, 627 F.3d at 551 (quoting *Brown Grp.*, 517 U.S. at 546). Conversely, requests for declaratory or injunctive relief rarely require individual determinations. *See Retired Chi. Police Ass'n v. City of Chicago*, 7 F.3d 584, 603 (7th Cir. 1993) (stating that declaratory and injunctive relief "will usually inure to the benefit of the members actually injured and thus individualized proof of damages is often unnecessary"). Thus in *Association of American*

---

[11]Plaintiffs contend that "the Court does not need to consider whether Blind Ambitions has satisfied the third prong of the *Hunt* test" because the requirement is not constitutionally based. Ps. Mem. 15. The court disagrees. Although Congress can abrogate a prudential limit to standing, *see, e.g., DT Apartment Group LP v. CWCapital, LLC*, 2012 WL 6693192, at *15 (N.D. Tex. Dec. 26, 2012) (Fitzwater, C.J.), a prudential limit recognized by the Supreme Court is a limit on standing that must be considered.

*Physicians* the Fifth Circuit was able to conclude in one sentence that a request for injunctive relief did not prevent associational standing. *Ass'n of Am. Physicians*, 627 F.3d at 551 (after noting that damages relief generally prevents associational standing, stating, "[b]ut in this case, [plaintiff] seeks declaratory and injunctive relief"). Here, Blind Ambitions seeks only declaratory and injunctive relief to bring BB&T's ATM system into compliance with the ADA; it does not seek damages.[12] This requested relief will inure to the benefit of Blind Ambitions' members who are actually injured, and does not require individualized participation.

The claims Blind Ambitions asserts also do not require individual participation of a degree that is sufficient to preclude standing. BB&T argues that Blind Ambitions' claims require participation of individual members because organizations cannot suffer discrimination under federal and state law, and therefore it will be necessary for Blind Ambitions to call on members to prove their injuries. This argument appears to improperly graft the requirements for an association's standing in its own right onto the requirements for an association to sue as the representative of its members. The two are distinct. *See Warth*, 422 U.S. at 511 (noting "that an association may have standing in its own right" or "as the representative of its members"). Furthermore, the third prong does not prohibit altogether individual members of an organization from presenting evidence of their injuries. "[A]n

_____

[12]The second amended complaint contains a request by Hunter for damages on behalf of the putative class of blind persons who have attempted to use BB&T's ATMs, but Blind Ambitions requests only declaratory and injunctive relief.

association may assert a claim that requires participation by *some* members." *Hosp. Council of W. Pa. v. City of Pittsburgh*, 949 F.2d 83, 89 (3d Cir. 1991) (cited with approval in *Ass'n of Am. Physicians*, 627 F.3d at 551-52); *see also Retired Chi. Police*, 7 F.3d at 601-02 ("We can discern no indication . . . that the Supreme Court intended to limit representational standing to cases in which it would not be necessary to take any evidence from individual members of an association."). The inquiry is whether the claims require such individual participation that granting the organization standing to pursue the claims is inconvenient and inefficient. In *Association of American Physicians* the Fifth Circuit concluded that there was associational standing where physician members of an organization claimed that members of the Texas Medical Board harassed them in multiple ways. *Ass'n of Am. Physicians*, 627 F.3d at 549-50. The panel explained:

> Proof of [defendant's] misdeeds could establish a pattern with evidence from the Board's witnesses and files and from a small but significant sample of physicians. Because [plaintiff] also seeks only equitable relief from these alleged violations, both the claims and relief appear to support judicially efficient management if associational standing is granted.

*Id.* at 553. The panel also found instructive the Third Circuit's decision finding standing where the plaintiff's claims "involve[d] a challenge to alleged practices that would probably have to be proven by evidence regarding the manner in which the defendants treated individual [members of the plaintiff organization]." *Hosp. Council*, 949 F.2d at 89-90. In the present case, Blind Ambitions can use statistical evidence and data gathered by non-members to prove that BB&T does not comply with federal and state requirements to make

- 17 -

ATMs throughout its network blind accessible.  It need not produce each, or even a majority, of its members to prove its claims.[13]

Because Hunter has standing to seek injunctive relief, Blind Ambitions seeks to protect interests that are germane to its purpose, and Blind Ambitions' claims and requested relief do not require individual participation of its members, the court concludes that Blind Ambitions has associational standing.

V

Although plaintiffs have standing to bring their claims in this court, they do not contest BB&T's alternative motion to compel arbitration.  In BB&T's motion, it relies on Hunter's having entered into the Bank Services Agreement ("BSA") that she signed when she established an account with BB&T to compel her to participate in arbitration.  As to Blind Ambitions, BB&T relies on "direct-benefits estoppel" or the "third party beneficiary doctrine" under Texas law, contending that Blind Ambitions seeks to derive a direct benefit from the BSA: the bolstering of its claim for standing in this lawsuit. D. Br. 19.  In their

---

[13]Some courts have denied representative standing to ADA claims.  *See, e.g., Concerned Parents to Save Dreher Park Ctr. v. City of W. Palm Beach*, 884 F. Supp. 487, 488-89 (S.D. Fla. 1994) (finding plaintiff lacked associational standing because "any finding of an ADA violation requires proof as to each individual claimant" and "the relief afforded to each claimant would require an individualized assessment of what measures the City must take in order to comply with the ADA on a case-by-case basis").  But here the injured parties are all blind, negating any complex individualized findings.   And because the ADA prescribes specific standards to make ATMs blind accessible, the injunctive relief need not be determined on a case-by-case basis. *See Coalition of Human Advocates for K9's & Owners v. City of San Francisco*, 2007 WL 641197, at *6 (N.D. Cal. Feb 27, 2007) (distinguishing *Concerned Parents* and other similar cases on similar grounds).

response brief, plaintiffs state: "Plaintiffs do not dispute the validity of the [BSA] and therefore consent to arbitration pursuant to the Federal Arbitration Act, a position which they have communicated to Defendant's counsel."  Ps. Mem. 1. n.1.

The court therefore grants BB&T's alternative motion to compel arbitration. Plaintiffs' action against BB&T is stayed pending completion of the arbitration process. Because there is no reason for this case to remain open statistically while the process is completed, the clerk of court is directed to close the case administratively for statistical purposes.

\* \* \*

For the reasons explained, BB&T's motion to dismiss is denied, and its alternative motion to compel arbitration is granted.  The clerk of court is directed to close this case administratively for statistical purposes.

**SO ORDERED.**

August 12, 2013.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE